UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL JOHNSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   No. 1:19-cv-04020-JPH-MPB |
| | ) |
| WARDEN, | ) |
| | ) |
| Respondent. | ) |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING ENTRY OF FINAL JUDGMENT**

Michael Johnson's petition for a writ of habeas corpus challenges his conviction in prison disciplinary case IYC 19-05-0169. For the reasons explained in this Entry, Mr. Johnson's petition is **denied.**

**A. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563–67 (1974).

1

**B. Disciplinary Proceeding**

On May 23, 2019, Indiana Department of Correction ("IDOC") Sgt. Sutton authored a Report of Conduct charging Mr. Johnson with a violation of Code A-102, assault with a weapon:

> On 5/23/2019 at approx.. 12:27pm while reviewing C unit latrine hallway camera I clearly observed Offender Johnson, Michael #985776 holding a broom while he was aggressively approaching Offender Gill, Jackson #269560. Offender Gill and Offender Johnson then engaged in a physical altercation with both offenders striking each other with closed fists. They then both fell to the floor and continued to strike each other. At approximately 12:28pm the offenders were separated by other offenders. Offender Johnson was then placed in mechanical wrist restraints and escorted to the shift office for photographs then to RSH pending a 102A conduct report.

Dkt. 10-1.

On May 24, 2019, Mr. Johnson received a Notice of Disciplinary Hearing Screening Report notifying him of the charge. Dkt. 10-2. Mr. Johnson pled not guilty and requested a lay advocate. *Id*. He requested to call Offender Jackson Gill to ask "was [Johnson] the one who assaulted you? Did you get hit with a broom? What are your scratches from?" *Id*. Mr. Johnson also requested physical evidence of his evaluation from the nurse. *Id*. Offender Gill answered Mr. Johnson's questions stating that Johnson did not assault him, he was not hit with a broom, and his scratches were from an altercation he had a week prior. Dkt. 10-4.

The disciplinary hearing officer ("DHO") reviewed video of the incident and provided the following detailed summation that the Court copies here:

> At 12:21:22 on HUN C UNIT LATRINE HALL camera, Offender Johnson is seen pacing in the latrine( black offender, no shirt on) with his hands clinched to his sides. At 12:22:20, he walks to the door of the latrine/bedarea and stands just inside the bedarea. At 12:22:25 on hun c unit middle camera, Offender Gill comes and stands in the middle of therows( White offender, gray shorts, no shirt, black boots, tattooos covering his arms). He then stands facing Offender Johnson, who is talking to an unknown offender. Offender Johnson and Offender Gill appear to be talking to each other. At 12:23:25, Offender Gill approaches Offender Johnson. Due to his body language, it appears they are now confrontational with each other. At this time, multiple offender gather around them inside the bedarea, and a large group has gathered right inside the latrine near the phones. At 12:24:05, Offender Gill walks away, and stands directly in front of the air vent, talking to an unknown offender. The unknown offender appears to say something to someone near the area Offender Johnson is standing at, but unclear who he is talking to. Offender Gill then turns and faces in the direction of Offender Johnson. The unknown Offender then starts talking to Offender Gill again, and begins pointing in the direction of Offender Johnson. An unknown black offender, then comes up and starts talking to Offender Gill. At 12:24:47, Offender gill begins walking towards the latrine. Once Offender Gill is in the latrine, Offender Johnson follows him. They begin to be confrontational again in front of the phones. An unknown Offender steps between the two of them. At 12:25:06, Offender Johnson walks towards the latrine/dayroom doorway, away from Offender Gill, who is still standing in front of the phones. He then begins pacing in the latrine. At 12:25:39, Offender Johnson goes over to the mop bucket, and grabs the mop. He picks it up out of the bucket a little, and then sits it back inside the bucket. He then takes the mop head off the mop. He then carries the stick part of the mop over towards the broom, which is leaning against the wall of the shower side of the latrine. He then picks up the broom, and puts the stick part of the mop against the wall, which then falls to the ground. He then walks towards Offender Gill, with the broom at his side. He then stands near the sink side of the latrine, twirling the broom around in his right hand. At 12:26:23, he walks into the sink side of the latrine, where he is off camera. At 12:26:32, he returns to view still with the broom in his hand. He then begins to stand directly in the middle of the latrine hallway, twirling the broom in his right hand. At 12:27:10, Offender Gill comes into the latrine from the bedarea. Once Offender Gill is approximately 10 or 15 feet away from him, he goes into the sink side of the latrine and cant be seen. It is clear him and Offender Gill are speaking due to Offender Gills body language. Offender Gill attempts to go on his right around an Offender in a wheelchair, in which Offender Johnson comes out of the sink side of the latrine, and appears to swing the broom at Offender Gill. The unknown Offender Puts his left hand up, in attempt to stop the broom from hitting himself. Offender Gill walks towards Offender Johnson, and puts his left hand up towards Offender Johnson head area, as Offender Johnson is striking Offender Gill with the broom stick. Offender Gill then strikes Offender Johnson on the left side of Offender Johnson, with his right hand. The two then begin to strike each other, and then go into the sink side of the latrine, and cant be seen. The offender in the wheelchair then picks up the broom, and places it next to the trash can. At this time, a large group of offenders have gathered and are watching the incident. At 12:27:50, Offender Gills head can be see on the floor underneath the first sink closest to the latrine hallway. He then slightly leans against the wall sitting up, with his feet in the air, appearing to protect himself as Offender Johnson continues striking him. They then can not be seen once Offender Gill gets up. At 12:28:07, They return to the hallway, with Offender Johnson holding him in what appears to be a headlock. Offender Gill then stands up, and Offender Johnson goes over Offender Gill, as if he was thrown over him. They then continue to wrestle on the floor, until 12:28:31, when Offender Johnson stands up and strikes Offender Gill two more times with his right closed fist. Offender Gill then steps back towards the latrine/ bed area door, as Offender Johnson steps back into the sink side of the latrine. Offender Johnson then pushes an unknown Offender, and grabs the broom that is to his left. He then begins to face Offender Gill, who is walking out of the latrine. Offender Johnson then walks towards the bed area/latrine door with the broom in his right hand. He then continues to carry the broom into the middle aisle of the bed area, and appears to be flexing, and yelling towards the direction of Offender Gill. He then begins walking down the aisle between C1 and C2, but then turns around, and walks back towards the air vent area. He then turns back around and faces the direction of Offender Gill, with the broom held like he is going to strike him with it. At 12:29:33, the offenders nearby in the chairs, stand up and leave the area where Offender Johnson is holding the broom up at. He then walks towards Offender Gill again, but then turns around. He then returns to the area near the bed area/latrine door. Officers are then seen entering the latrine, and the unit is placed on there bunks.

Dkt. 10-5. The Court has reviewed the video footage provided for *in camera* review and finds that the summation provided accurately depicts the events that occurred. *See* dkt. 14.

Mr. Johnson's hearing was held on June 2, 2019, and he made the following statement: "Offender states that he never hit the other offender with the broom stick. Offender also states that

3

the 102A doesn't fit the conduct report." Dkt. 10-3. The DHO considered the staff report, the offenders' statements, video, and photographs after the incident and found Mr. Johnson guilty. *Id.* Mr. Johnson's sanctions included the deprivation of 150 days earned-credit time. *Id.*

Mr. Johnson appealed to the Facility Head and the IDOC Final Reviewing Authority, but neither appeal was successful. Dkt. 10-7; dkt. 10-8. He then filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. 1.

**C. Analysis**

Mr. Johnson asserts three grounds for habeas relief in his petition: (1) that the conduct report does not support his charge of a violation of Code A-102 assault with a weapon; (2) the other offender involved in the incident stated that he was not hit with a weapon or assaulted; and (3) the reporting officer stated he observed the offenders in a fight "striking each other with closed fist[s]." Dkt. 1 at 2–3.

On January 23, 2020, Mr. Johnson filed a reply brief and raised new grounds for the first time.[1] Dkt. 16. The respondent filed a response on January 31, 2020, and argued that these grounds are barred. Dkt. 17. The Court agrees with the respondent because "[a]rguments raised for the first time in a reply brief are waived." *Stechauner v. Smith*, 852 F.3d 708, 721 (7th Cir. 2017). Therefore, the Court will only address the three grounds raised in Mr. Johnson's petition in its

---

[1] Mr. Johnson argues that the conduct report and its description of the events do not mention the use of a weapon or bodily waste and does not support the charge in accordance with IDOC policy. Dkt. 16 at 1. Mr. Johnson pointed out the Deputy Warden made an error in the response to his appeal by stating "All paperwork for, evidence and documentation for IYC 19-05-0169, 215 (Class B) and unauthorized possession of property has been received and reviewed." *Id.* 1–2. This was not his charged offense. The Court notes that this appears to be a clerical error as the response does indicate violation of Code A-102 and explains the definition of the charge in the following paragraph. Dkt. 10-8. Mr. Johnson argues that Code A-102 is vague and forces people of ordinary intelligence to guess at the its meaning. Dkt. 16 at 2–3.

analysis of the merits. The Court construes these three grounds as challenges to the sufficiency of the evidence to support Mr. Johnson's conviction.

Mr. Johnson argues that because "the reporting staff says that while reviewing the camera he clearly only observed [Johnson] holding a broom [and] [h]e never states in the description of the incident that [Johnson] struck an offender with it, or even that [he] swung it at an offender[,]" the conduct report does not support the charge. Dkt. 1 at 2. Additionally, he argues that the evidence is insufficient because the other offender involved stated that he was never hit or assaulted and did not have serious bodily injury and because with the reporting officer said that he observed the offenders striking each other with closed fists. *Id.*

Courts may not reweigh evidence already presented at a prison disciplinary hearing. *Viens v. Daniels*, 871 F.2d 1328, 1328 (7th Cir. 1989). "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274 (7th Cir. 2016); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. The conduct report "alone" can "provide[ ] 'some evidence' for the . . . decision." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). Nonetheless, in a safeguard against arbitrary revocation of an inmate's good-time credits, a court must "satisfy [itself] that the evidence the board did rely on presented 'sufficient indicia of reliability.'" *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). To challenge the reliability of evidence introduced

5

during a prison disciplinary hearing, there must be "some affirmative indication that a mistake may have been made." *Webb v. Anderson*, 224 F.3d 649, 653 (7th Cir. 2000).

Mr. Johnson argues that the offense he was charged with violating was labeled "assault with a weapon." But Offense Code A-102 is categorized as "battery" and defined as "[k]nowingly or intentionally touching another person in a rude, insolent, or angry manner; or in a rude, insolent, or angry manner placing any bodily fluid or bodily waste on another person." Dkt. 10-10 at 1. Under this definition, the Court finds that some evidence exists to support the DHO's decision that Mr. Johnson battered the other offender, regardless of whether he hit him with a broom.

The DHO relied on the conduct report which described the physical altercation and the video footage that captured Mr. Johnson carrying the broom while approaching the other offender and the two engaging in a fist fight. The DHO reviewed, and the Court has examined, the photographic evidence of the offenders after the incident and of Mr. Johnson holding the broom. Dkt. 11. The statements from Offender Gill and Mr. Johnson were considered by the DHO. Mr. Johnson argues that the DHO's outcome should have been different because of these statements and the description provided by the reporting officer in the conduct report. This asks the Court to reweigh the evidence, which it cannot. *Viens*, 871 F.2d at 1328. Further, the DHO is not required to believe these statements over the other evidence in this incident, such as the photographs and video. It is solely the province of the DHO to make credibility and comparative weight decisions.

The Court finds that Mr. Johnson's conviction was supported by sufficient evidence, and as such, he is not entitled to the relief he seeks on these grounds.

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge,

disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Johnson to the relief he seeks. Accordingly, Mr. Johnson's petition for a writ of habeas corpus is **denied** and this action is **dismissed** with prejudice.

Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 4/21/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

MICHAEL JOHNSON
985776
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

David Corey
INDIANA ATTORNEY GENERAL
david.corey@atg.in.gov